which is number 20-12407 Mario Del Valle et al versus Trivago GMBH and Booking.com BV. Mr. Rolnick whenever you're ready. Thank you Judge Jordan and good morning. May it please the court Alan Rolnick for appellants Mario Del Valle, Enrique Falla and Angelo Poe. On March 13th of 2020, the president announced the COVID lockdown in the midst of a great worldwide panic and pandemic that was causing chaos, offices closed, people were dispersed. Most of the cases of which I'm aware in the Southern District of Florida were stayed. Ten days later, on the 23rd, the Expedia defendants here moved to dismiss the First Amendment complaint which was filed on January 17th. That was the first complaint to add Expedia as a defendant. It was the second correction and amendment of the original complaint, both of which were Curiously though, 10 days before the presidential announcement, on the 3rd of March, Expedia had conceded personal jurisdiction in a related virtually identical case based on other confiscated properties that was then stayed. Also on March 23rd, the parties jointly moved to stay this case below. That motion was denied one hour and 36 minutes after it was filed. Can I ask you a favor? This is Judge Newsom, but you've got limited time. I see eight minutes and change remaining. Seems to me there are two pretty big issues in the case. One about personal jurisdiction, one about standing. I guess I would just ask you to go like get into it. All right. Very good. Your honor. The bottom line here is that the complaint that was submitted for decision after being briefed on a motion to dismiss was the first such complaint that was briefed and submitted for decision. This was the first motion to dismiss that was adjudicated in a case in which plaintiffs were unable to use discovery from other cases having been produced under confidentiality agreements. Discovery had not been allowed until February 10th. The short answer is that the mystifying order that was issued seven days or was signed seven days after briefing complete completed ignored the allegations in the complaint under the floor long arm statute. Said they weren't there. Distorted what was there and mystifyingly held that the allegations of that complaint were legally insufficient. So which which long arm statute prong do you want to tackle first and let's go ahead and tackle it. Let's talk about doing business jurisdiction. OK. So do we agree that sort of the horizon factors are, you know, sort of going to guide us here. And can you walk us through and tell us which ones you think are satisfied and which ones in all candor you think the complaint doesn't doesn't hit. Well, our view is that the complaint adequately alleged be carrying on of a business in Florida. We alleged offices and employees in Florida sales made to Floridians through websites that were accessible in Florida, which should be the end of the matter under Pathman Renaissance Health and this court's other decisions. We also alleged, as I said, offices and numerous employees who were involved in marketing these hotels on these confiscated properties to Floridians through target marketing emails. You left something in your shopping cart, follow up emails and geo locating operations aiming nostalgic visits to Cuba, to Cuban-Americans in South Florida. Who are plaintiffs, by the way, are. Now, consequently, and there should be there should be little doubt and there was little doubt that allegations of sales to Floridians in Florida over a Web site are sufficient to support personal jurisdiction on a doing business basis. This court's decided that other courts have decided that we've cited Pathman, we've cited Renaissance Health for reasons I can't I can't explain. The order on appeal said that we relied only on Mosseri, which was a case in which a passive Web site offering information only was held not to be sufficient to support the exercise of personal jurisdiction over a nonresident defendant. That is not what was alleged. The complaint. At issue, paragraph 13. Alleged fully interactive Web sites, sales made over the Web sites, and in fact, the defendant's entire business model is the sale of reservations at worldwide hotels, including Cuban hotels, including the two hotels built on the confiscated properties at issue in this case. And if it wasn't for sales over the Internet, paraphrase an old blues song, the defense would have no business at all. That is their business. We alleged marketing and sales promotion to Floridians. And that. Many of those sales, if not all of them, were for the purposes of tourism, which is a prohibited activity in any event, but that's not an issue now. The bottom line is that to make it simple. Sales to Floridians in Florida demonstrated doing business jurisdiction, it also satisfied minimum contacts by any stretch of the imagination. If we had been given time to obtain the discovery that we had obtained in slightly earlier filed cases. Expedia would have had to concede jurisdiction here, too, but because they could go for it, they went for it. And I see I'm going to run out of time, you're honest, so if I may move on quickly to. Toward in Florida jurisdiction under forty eight one ninety three one eight two, this one was simple to the order on appeal, basically ignored what was cited and said, well, this is different from a trademark infringement case, so there's no court this court in Florida. We cited well-established authority for statutory towards such as Florida's chapter five or one, it claims being subject to long arm jurisdiction under that provision. We say the cons versus royal wine merchants. And there was little question that we had alleged the commission of a statutory toward. In Florida, through the marketing of these properties to Floridians and the sale of reservations at these hotels to Floridians in Florida, can I can I ask? This is Judge Newsome again, and I don't mean to hijack your argument, but before you run out of time, you got two and a half minutes. Can you talk to us a little bit about standing? Is your theory of standing that you have a tangible economic pocketbook injury either by virtue of what I'll call the authorization provision in the Helms Burton Act or otherwise, or is your contention that you have an intangible injury that bears some resemblance to a common law cause of action? And if so, what? Well, I'm not so certain that we can drive a tangible intangible distinction here because it seems to me that you paired common law analogy reasoning with intangible injury. Well, that's the way the Supreme Court has told us to do it. And I understand your honor. Let's put it this way. The properties that were confiscated from the plaintiffs are being trafficked. Some of the traffickers include the appellees, these defendants who are benefiting from the trafficking in the properties and have been making money from doing so, and that that cause of action for their unjust enrichment, which Congress mentioned in its findings in the Helms Burton Act, has been found to be an analogy by a couple of courts, one of which is Judge Bloom's court in the Southern District of Florida in one of the Havana docks cases and the Glenn court in the recently issued decision in the Fifth Circuit. In addition, there are other common law analogies that abound after the fact dealing in stolen property, aiding and abetting a breach of fiduciary duty is solid Florida authority for that. If analogies needed. Analogies exist, is is is aiding and abetting or I guess I shouldn't use trafficking, but aiding and abetting, converting or converted property, is that the same thing under the common law is what what we call Trover? Is that the same thing? It's very similar. Yes, it is very similar to Trover, your honor, and although those issues aren't squarely presented on this appeal, I expect the panel will get into them later in the day on one of the other. Well, I mean, I guess one question I have is because standing as a jurisdictional issue, once the issue has been presented, can we really say that like some common law analog is off the table or like once once standing is before us, do we have to figure out whether or not there's a common law analog or not? We submit that that's not the courts, that's not necessary for the court to do. If Congress only had the power to codify common law claims, that would be one thing, but it doesn't. Its power plainly is not so limited. And the analogy need not be perfect, as this court said recently in the Maransky case, or the fit in these cases is very tight and it's very close. And the bottom line for us is that what we would ask the court to do is to remand this case. And after making a finding that the complaints personal jurisdiction allegations were legally sufficient, remand with instruction with instructions to reopen it, reinstate the complaint and find that personal jurisdiction exists because the allegations were legally sufficient and defendants made no attempt to and couldn't have rebutted them. And two, and this speaks to the bench's questions, allow plaintiffs to interlineate or otherwise amend the complaint to expressly allege equitable tolling of the March 12, 1996 record date, as we've been calling it. Due to 23 years of presidential suspension that barred the courthouse door to all Title III claimants, this statute was not written to favor eternal corporations and disadvantage people who might die during the suspension period, as the ancestors of every plaintiff who's been barred for a late acquisition of their claim so far under this statute has suffered. Those people who were barred could go out and buy shares of Exxon tomorrow and own a but the claim that they inherited from their parents apparently was barred by the 312 96 record date. This court suggested in Gonzalez that presidential suspension for 23 years might support equitable tolling as part of a remand order. In this case, we would ask for direction to district court to allow us to interlineate or amend the complaint to expressly allege that as to plaintiffs Poe and Faya who were mentioned in a drive-by footnote in the last page of the order on appeal as not having actionable claims. We assume, we don't know, because this judge issued the Gonzalez order that that's what this judge was thinking about. As in the Glenn case and inheritance after 312 96. All right, thank you very much and you you've served your reserved your five minutes for rebuttal. Thank you. Okay, who's going first Mr. Duffy or Mr. Shank? Mr. Duffy, your honor. Okay, Mr. Duffy. Okay, Mr. Duffy, before you start, whether the district court got the personal jurisdiction issue right or wrong, right, which is something we'll talk about. The district court certainly didn't read the complaint appropriately. It did not reference the fact that the complaint alleged that there were offices in Florida and it did not deal with the allegation that there were follow-up emails to Florida residents who had accessed the website. Now, I'm not saying that those things are enough. I'm not saying that they are enough. I'm just saying you read the district court's order and those things are nowhere to be seen. Well, that that to me is a problem. I understand because you challenge the complaint on personal jurisdiction grounds and if in a facial way, you did not submit affidavits to make this a factual fight, right? So you take the complaint as it is and to the extent that there are specific factual allegations, you accept those. And we appreciate that, your honor. Let me just begin by saying my name is Michael Duffy. I'm here on behalf of the booking at police. My colleague at the bar is David Shank, who is here on behalf of Expedia. We've sort of been traveling around this state and others litigating these Helms-Burton matters and we've decided to try and divide our argument such that I would handle personal jurisdiction, though I'm fluent in standing. And Mr. Shank will talk about standing. I'm happy to do both. Did I ask the right question? You did, you did. It was apropos. Your honor, I agree that Judge Scola's order doesn't directly reference the allegations with respect to offices or the emails that were sent. But I think it's worthwhile to actually look at the language of the amended complaint, which is much more opaque than what my colleague at the bar, Mr. Rolnick, says. And that's confined to page 140 of appellant's appendix. And if the court directs itself specifically to paragraph 15, that paragraph says, on it right here, all right, sir. It says, the Expedia and booking.com entities promote their websites and their interactive capabilities for booking hotel rooms at Cuban hotels, including the trafficked hotels on the internet, including to Floridians in the following way. And if you look at B, through their follow up emails to Floridians who have searched for trafficked hotels or other geographically proximate hotels, that's B. Now, with respect to B, members of the panel, there has to be some causal nexus between the alleged, I mean, and I know this area of the law is developing with Ford, but we know that the alleged allegation must arise out of or relate to the subject, this state, Florida. And here, what is alleged is that there are emails being sent, perhaps promoting hotels, perhaps promoting tourism in Cuba, but not actually trafficking. Trafficking here, unlike in the trademark context, where the violation is the display of the mark, trafficking here is not sending an email, and we'll talk about trafficking when my colleague at the bar gets up, whether that is a cognizable cause of action under Article 3. But trafficking here is the reservation being placed, not, even assuming these allegations, taking them at their face, which they are opaque, there is no allegation, there is no causal nexus between this allegation and what is the alleged harm. There has to be some causal nexus. So just kind of walk me through that, because I guess I would have assumed that the point of the follow-up email would be to secure the reservation, which you say is the trafficking. Well, the complaint doesn't say that, and I would imagine— You don't think that's a fair inference from the complaint? Respectfully, I don't, because— What would otherwise be the point of the follow-up email? Well, for example, you can look online and solicit information, and if someone sends you—I mean, and the key point here, which— But aren't they always trying to sell you something, right? Well, again, with respect to Cuba, and this is raised in the briefing, particularly with to Cuba, unless they—only if they certify that they meet 12 of the OFAC requirements. And so here— Mr. Duffy, can I tell you something that may not be appropriate, given our status here, looking at the record? But it is a common understanding and belief in the South Florida community that those OFAC licenses aren't worth the paper they're written on, and that people travel to Cuba whenever they damn well please, because they say that they are going on a religious or charitable trip, and then they're on the beaches of Aradero, or they're doing something else. But that's just an aside, and that's why I preface it by saying it may not be a great statement to make. But let's go to something that is before us, paragraph 58 of the complaint. Many of the booking.com's entities' consumers, including customers from Florida, travel to Cuba, and to the traffic of the hotels in particular, for tourism, which is not a permitted purpose of travel to Cuba under the U.S. Treasury Department regulations, and is thus not lawful travel. That's an allegation that has to be accepted. So there are Florida residents who do travel using your client's services and website. How can it not be a fair inference that some of those individuals are the ones that you reached out to with return emails? Well, respectfully, Your Honor, the allegation that some Florida residents may have traveled to Cuba for tourism doesn't necessarily relate to the booking site whatsoever. It says that it's many of the booking.com's entities' customers, including customers from Florida. How can you read that any other way? I understand that the allegation is made in that sense. However— You have to accept it. You're stuck with it. Well, I agree that the allegation is made that many of the booking.com customers have traveled to Florida. The issue here, however, is, is that causal nexus? Is the connection between that allegation and the trafficking sufficient? And— You're supposed to read the complaint with reasonable inferences. So if you— If you allege that you have an interactive website, which is directed in part to Florida residents, Florida residents access the website, you send emails back to the Florida residents who access the website and interact with them in a non-passive way, and then there's an allegation that a number of your Florida customers then travel to Cuba using your services on a facial challenge to the complaint, how can that not be enough? Well, I think the key is, again, depending upon where we go with but for and arise out of, is that significant causal nexus to say that, again, a bald allegation that there is travel to Cuba using our services, is that sufficient to establish, at least for these plaintiffs, this plaintiff in particular? You have to establish that somebody booked a specific day at a specific time with regards to these hotels, because that's alleged here, too. I mean, respectfully, Your Honor, I also think it has to be this plaintiff, correct? That this plaintiff has suffered, at least in our understanding of the allegations, this plaintiff, the harm to this plaintiff has a causal nexus to the forum state. Now, they've had multiple opportunities to allege this and the opportunity to pursue discovery, and this plaintiff has never done that. All right, let's talk about, since you're running out of time, too, due to me, let's talk about the allegation with regards to the offices. Paragraph 16, on information and belief, a substantial part of the Expedia and Booking.com's entities' business and revenue derives from their Florida offices. Happy to address this one as well, Your Honor, because I do think it's important. If you look at the language of that paragraph, which is passive, it's a passive voice, there's two things. The first is, again, no causal nexus between the offices themselves being in Florida and the trafficking. Offices are there, and the fact that Booking may or may not derive income from its operations in Florida has no connection to the underlying reservations. That, I think, textually is correct. Moreover, if you look at the way in which this is drafted, it never says that Booking Holdings, which is the ultimate party here, or Booking.com BV, which is a Netherlands corporation, have offices in Florida. They don't. What it says is the entities. So this is some sort of pleading whereby through, you know, using the corporate form of a company like Expedia and or Booking, you can say that because revenue is derived from these offices, somehow jurisdiction is appropriate. And I guess the point here again, Your Honor, is there's got to be some causal nexus, connection to the allegation. They had the opportunity to do that. They did not. You may be right at the end of the day, but not touching upon those two sets of allegations in an order of dismissal doesn't leave me with a great deal of confidence. And I appreciate that, Your Honor. And I think the issue here, however, is you have a plaintiff that had multiple opportunities to cure its pleading, had multiple- That doesn't matter. Yeah. Because you could say, listen, I gave you chances. You didn't do it. These five things you allege, not enough. But it's not good to say I've given you these opportunities. You've alleged only three things when there are five things alleged. Well, and I think, Your Honor, the infirmity of the complaint is also, I think, on the standing side as well, which Mr. Shank will talk about. But I think you have here- We have a separate issue, I think. I mean, although there's a slight overlap. I do think there's an overlap, and I'll let Mr. Shank address that. But there's a difference between the two. And if you're a plaintiff and you've alleged X, Y, and Z, and you think that gets you over the hurdle, and the judge doesn't think it does, then the judge should say Y, X, Y, and Z don't get you over the hurdle. And I appreciate that. But I think when you look at the allegations and their text, Your Honor, the allegations themselves are still lacking from a causal perspective. And I'll reserve the rest of my time for Mr. Shank. All right. Thank you very much. Good morning, and may it please the Court. I'm David Shank. I represent the Expedia entities, and I intend to talk about the second jurisdictional defect in the plaintiff's case, which is lack of standing. Now, you didn't raise this issue. Yes, Your Honor. The Expedia entities raised this issue in the trial court, as did the other defendants, and we also raised it in our briefing before this Court. I thought the standing issue was raised predominantly by the amicus brief. The standing issue was raised in our appellee's brief extensively. And I believe the booking defendants joined our arguments in that brief. Maybe that's the one I'm thinking of, that it was just an incorporation by reference with the booking.com entities. And the amicus brief did raise the standing issue. I'll start with Judge Newsom's question. Is this a case of tangible injury or intangible injury? This is a case of intangible injury. There is no allegation in the complaint that even suggests a tangible injury suffered by the plaintiffs as a result of the defendants offering reservations at these hotels. That is, the plaintiffs would be in exactly the same position they're in today, had the defendants never facilitated reservations at the hotels. They would lack ownership and possession of these properties. The hotels would still stand there, and they would still be full of tourists from Europe and it sounds like also from Florida. So can I ask you a question about that? I mean, I guess I have like two thoughts about tangible injury. One, I mean, wouldn't the plaintiffs just say, in effect, our properties to which we claim title or ownership are being, in effect, used rent-free? And I mean, that's a pocketbook injury. And then the question becomes one of causation or traceability. Is that injury properly traced back to the booking entities? Even if they had alleged that that type of injury using property that they own, which I'll note, they do not allege that they have ever owned these properties or possessed them. But that would not necessarily be a tangible injury just because there may have been gains by or money earned by the defendant's use of the property. And I think that's exactly why this is a case of intangible injuries. Again, the plaintiff's circumstances, financial and otherwise, would not be any different today if the Expedia entities and booking entities had never facilitated reservations at these hotels. Okay, let me see if I can craft a hypothetical for you. So let's assume that we're in Florida, so we use Florida. Let's assume that the state of Florida takes over physical and title ownership to a piece of property somewhere on the coast, east coast or west coast, okay? Let's assume that that state action is an unconstitutional taking of land, okay? And the state of Florida then decides it is a valuable piece of land and it's going to use your clients to solicit reservations for use of that land to be on the seashore. Putting aside sovereign immunity and 11th Amendment issues, would the owner of that property have suffered injury? The owner of that property would have suffered a tangible injury caused by the state. The confiscation would be a tangible injury. Not the confiscation, the reservations and the use of that property all the way forward. No, Your Honor. And why is that? Because those plaintiffs, assuming everything else is the same as in this case, the defendant's actions in offering reservations would not have tangibly affected the plaintiff's circumstances in any way. Okay, so what if our plaintiff, so what if my plaintiff used his or her property for reservations and used his or her property as a second home on the water and used it year-round and rented it out to tourists? And now that person is prevented from renting it out to tourists in the future because the state has now taken it over, made it a state property, and has used your companies to solicit other tourists to stay there and pay the state money and your companies get a commission. Has that plaintiff suffered injury? It has suffered injury at the hands of the state for the confiscation. I'm not talking traceability and I'm not talking redressability either. Those are issues. I'm talking injury in fact. Has that plaintiff suffered injury in fact? That plaintiff has suffered injury in fact, but... Because? Because the state has confiscated their property. Same thing here. Except here, your honor, it does matter. The causation and injury analysis can't always be separated. Yes, they can. Causation and redressability often go hand in hand. Injury in fact is a different animal altogether. And you're not supposed to be looking at the merits of a claim to figure out whether somebody has injury in fact or not. So tell me why that plaintiff has injury in fact in my hypothetical, and here there's no injury. That plaintiff has injury in fact because it was an actual owner of the property. That property was confiscated from that owner and that confiscation worked in injury on the plaintiff. Same allegations here. Because on the merits, you argue that there isn't an ability to sue because of when the transfer of property through inheritance occurred with regard to some of the plaintiffs, right? But with regards to one of the plaintiffs, that's not an issue. So they are owners. They are owners of the property right now and they are U.S. nationals. So that international law doesn't necessarily prevent a cause of action for the confiscation. They are not owners right now. Nothing in the... What are they? They are plaintiffs in the Helms-Burton case. What are they by virtue of their inheritances? What are they? We would say they are plaintiffs with no standing. What are they? That's a legal statement. What are they factually? If you inherit an interest in land and that interest is disputed, what are you? If you inherit an interest in land and a legal interest, you would be an owner. But that is not... I'm saying that the interest is disputed. So my father passes away, gives me a piece of property, but he's been engaged in a 10-year battle with his brother over ownership of that property. So what do I inherit? Am I nothing? Do I have nothing? I don't know what you inherit, Your Honor. Don't I inherit whatever he has, which is the ability to continue litigating and see if I have an interest in property? I think that depends on a variety of facts that aren't present here. Here, Your Honor... But at the very least, in Judge Jordan's hypothetical, you have a claim, correct? Yeah, but you have a claim to that. The estate may be allowed to continue that cause of action. It may not. I mean, isn't that the way the statute characterizes these people as claimants? Yes, Your Honor. And that's an important point. And so returning to the intangible injury point, I think what TransUnion... Yes, Your Honor. I promise I'll let you get to intangible. But one more question with respect to tangible. The statute provides for this mechanism by which a claimant can authorize the use of his claimed property, right? I'm looking at 6023.13a. Conduct that would otherwise count as trafficking is not trafficking if it's authorized by any United States national who holds a claim to the property. It effectively enables this negotiation between claimants and users and would-be traffickers. And if that's true, why haven't these claimants suffered a monetary pocketbook injury by virtue of the lack of authorization? I assume that would be a negotiated term that they'd get paid. Because these plaintiffs have no ability to earn income from these properties. So it's not as if they're... claimant under this provision. I mean, all these people are kind of dispossessed, right? I mean, they're all in the same boat. Correct. The reason you say they have no ability is because the law as carried out in Cuba has divested them of any opportunity to do anything. And this law, correctly, incorrectly is trying to give them back that ability to have some control, some benefit from the properties that were allegedly taken from them in violation of international law. That does seem to be what Congress intended to do. But the question that's standing is whether Congress under Article 3 may do that in the way that it did. And the answer to that question is no, it may not. And the reason it may not is because these plaintiffs... If you allowed, if you allowed, let's say Congress took a step that was even broader than this one and said, you know what? For properties of U.S. nationals confiscated by the Cuban government without consent and in violation of international law, we are eliminating the Foreign Sovereign Immunities Act bar with regards to claims against Cuba for the value of the property taken. Would there be an injury in fact? Yes. In that case, if these plaintiffs sue the Cuban government, the difference is because... Well, let me back up. If the original owners... The financial injury is a little different because one is for the value of the property and Helms-Burton certainly tries to quantify the damage in a different way. But what's the difference with regard to injury? The difference with regard to injury, and there are two differences here. One is that the confiscation, of course, worked to injury on the owners at the time of confiscation. You take someone's property from them, you have worked an injury on them. These plaintiffs have expressly disclaimed that the confiscation is their injury. They've expressly disclaimed that in the trial court, they've disclaimed it in this court, and they did it to avoid the causation issue because they know they cannot say that the expedia entities caused the confiscation. And so they have expressly said the confiscation is not their injury. They have instead said that they have an injury simply because Congress created the Helms-Burton Act. It granted them a private right of action and that private right of action was violated. And that has been their continual theory in this case. And they have never asserted a pocketbook injury caused by the defendant's conduct. Therefore, we are in the world of intangible injury. And as TransUnion teaches and Moransky teaches, that means we must conduct the common law analog test. And here, as TransUnion just stated, that test asks, have the plaintiffs identified a common law or traditional cause of action that is a close analogy to the statutory claim at issue here? And these plaintiffs have not. They have not because... What do you think the contenders are? I mean, we've heard unjust enrichment, conversion, trover. What are the contenders? The only one that the plaintiffs have identified, the only example they've offered up, and TransUnion makes clear it is their burden to identify this common law cause of action, is a claim for unjust enrichment based on infringement of property rights, which I think could take the form of trespass, conversion. Unjust enrichment is often a remedy for various infringement of property rights. Now, what Moransky, Treschel, and TransUnion teach is that in performing this common law analog determination, what the court does is it looks at the proposed analog. It identifies the key elements, or I think in the words of Moransky or in Treschel, it was bedrock elements of the proposed analog. And then it sees if those bedrock or key elements exist in the statutory claim. And here, the proposed analog being unjust enrichment for infringement of property rights, there are at least two bedrock elements that do not exist in the statutory claim. First is the defining characteristic of unjust enrichment itself, which is that it is a remedy or a doctrine that in all of its substantive contexts is about recovering from the defendant the amount that the defendant gained, and that for whatever substantive reason would be unjust or unequal for the defendant to keep. That is, unjust enrichment . . . If you're the owner of property and someone is benefiting from that property without compensating, why isn't that unjust enrichment in the common law sense? It is unjust enrichment when it is an action to recover, an action focused on and limited to the recovery of the defendant's gains. So, if they wanted . . . So, if Helms Burton provided the quantification of damages, not the way that it currently does, but your gain, the commissions you earned, and the money you earned from both the Cuban government and from bookings, they'd have injury in fact? They would if the second key element . . . If Helms Burton was not limited to no matter what degree of trafficking, whether you're a shoeshine man in the hotel who made $1, under Helms Burton, you're liable for the entire value of the properties. Two beachfront hotels. The Glenn case in the Fifth Circuit is a perfect example. There, American Airlines was alleged to have made $500. $500, but the only relief the plaintiffs do and can seek is the entire value of four beachfront hotels in Cuba. That is not unjust enrichment under any common law conception. I know I'm well over my time and . . . What's the second problem? The second problem relates to the substantive context for unjust enrichment that the plaintiffs invoked here, infringement of a property right. And this gets back to our earlier conversation. These plaintiffs are not owners of the property, possessors, and they never have been. Why do you . . . How can you say that when at least one of them has become the owner through inheritance and some of them, maybe not in this case, have gone through the certification process and have had the U.S. government acknowledge a claim for a certain amount of money or property? How can you say that they're not owners? They're not owners, Your Honor, because there was nothing for the plaintiffs to inherit. That's a substantive matter. You're mixing merits with injury in fact. No, Your Honor, respectfully . . . You have to accept that . . . To figure out whether or not somebody has Article III standing, you have to assume that their cause of action has merits. So here, you have to accept that under Helms-Burton, some plaintiffs are owners of the property. Your Honor, that is the key issue. Helms-Burton does not make anyone owner of the property. In fact, it acknowledges that these plaintiffs are not owners of the property and instead invoking the language of the Claims Settlement Act . . . If you happen to be a person who was 17 years old, 18 years old, let's put them at the age of majority, 18 years old, when your property was confiscated from you by the Cuban regime in 1965 and you happen to still be alive today, are you an owner? I think original owners from whom it was confiscated could fix, could solve this missing problem. Are they owners for standing purposes? I think their cause of action, and then assuming we also had the fix in the statute on Justin Richmond . . . No, I'm not fixing anything else. I would not say they are owners. You are an owner. You had a beachfront home in Havana? Yes, Your Honor. Okay, and you are still the owner because you've been graced by God to live until this day today. So there's been no break in the chain of title. It was your property and it was taken from you. Are you an owner? That's my only question. No, you are not an owner, but I believe . . . Why are you not an owner? Because the . . . That's correct, Your Honor. Then that's exactly what the cause of action is for. That is exactly right. This is a problem that Congress tried to solve. It's just they tried to solve it in a way that now under TransUnion, the Supreme Court has decided they cannot use the courts to solve this problem, and that's because there is not a close enough analogy. I mean, this is the result of the injury-focused approach that the Supreme Court has adopted for standing. There may be a lot of other problems with Helms-Burton, but I'm not sure this is one of them. In any event, Mr. Tent, we thank you very, very much for taking you away over time, and we appreciate your patience with us. Thank you. Okay, Mr. Rolnick, you're back on. Thank you, Judge Jordan. Let's start by unpacking some of this standing argument, which is really a surrogate for a constitutional assault on the statute, which nobody has, none of the defendants in this case or any other case, have had the courage to make because it would bespeak their duty to have gone back to Congress at some point in the 23 years this statute was suspended to urge Congress either to appeal, repeal, or amend that statute. We understand that at common law, tortious interference is typically a tort that has a measure of damages for the use value, if you will, or the amount by which the interferer has been unjustly enriched. So it's tortious interference and unjust enrichment both have that kind of measure of damages. We know now, because they finally admitted it, that what Expedia is really concerned about here is the poor shoeshine man being subject to liability for the value of a hotel property. Well, look, hold on. I mean, let's sort of like simmer down a little bit. I mean, he's made some, you know, he's making analytical points about the match between unjust enrichment and the cause of action here. So now let's just tackle that. He says that unjust enrichment is not a good match. Doesn't have to be perfect, but he says it's not a good match because the nature, not so much just the measure, but the nature of the remedy for unjust enrichment simply doesn't fit here. So what's your response to that without respect to the poor shoeshine man? Well, first of all, as Maransky, which was a statutory offense with no tangible harm held, the correspondence, but even in a case like that, the correspondence need not be perfect for the common law to claim. And as we've already suggested, there are other common law claims that existed for many hundreds of years, such as after the fact, trafficking in stolen property, the fence would have been subject to liability for fencing stolen property, even if he wasn't going to obtain the value of the property for fencing it. And thief was, and he was just going to get a commission. So let me ask you a quick question. One, he mentioned, and if this is there, I don't doubt for a minute that it's there. I've just forgotten that TransUnion says that it's your obligation to come up with the common law analogies. Is that right? Are we sort of, are we, are we limited to the ones that you've come up with? No, particularly because your honor, this is not a case of intangible harm. Our clients have suffered a pocketbook injury. They have suffered the injury of properties to which they own a claim under the Helms Burton Act being trafficked for profit by people to whom they didn't give permission and from whom they're not receiving one penny in compensation. That is a pocketbook injury. We alleged solicitation and sales. We know we can prove solicitation and sales as soon as we get our hands on the discovery that caused Expedia to concede personal jurisdiction 20 days before filing their motion here. But we also know that this whole argument about what our clients and what are the Helms Burton Act plaintiff owns is somewhat beside the point because the Helms Burton Act expressly disallows the application of the act of state doctrine to endorse the Cuban government's theft of the properties at issue. And that wasn't done by accident. Nothing in this statute was done by accident. That was done so that the argument that a Helms Burton Act plaintiff owns nothing because the government confiscated the property would not be an argument with merit, would not be an argument that this court should credit. And it is not. That seizure was unlawful. And the Helms Burton Act was written to give a remedy for the trafficking in that property that enters for the benefit of the thieves, the Cuban government and whoever it is that they conspire with to monetize that theft. That's what the Helms Burton Act targets. We never disavowed confiscation as an injury. Obviously, the theft of one's property is a pocketbook injury. But we did expressly say over and over again in response to defendants mischaracterization of our claims that we were seeking the remedy for trafficking that property under the Helms Burton Act. And to the extent that the defendants in these cases wish that the measure of damages was different, maybe they should make a constitutional argument, which they haven't made. Instead, they've disguised their arguments as standing arguments. There's plainly a connection between offering and selling room reservations for which you get paid on property that was stolen from these plaintiffs and the injury that they suffered. And as we noted in our 28-J response, regarding the Blaine case, plaintiff's a master of his or her complaint. No plaintiff needs to sue every wrongdoer. There are prudential reasons for suing some and not suing others. One of which would be the time delay and cost of trying to sue a foreign sovereign that would delay and muck up the works. We saw that the works didn't have to get very mucked up here for this complaint to be improvidently dismissed without leave to amend at the first time of asking on the first motion that was submitted for adjudication. And it's offensive for the defendants to continue arguing that the plaintiffs had multiple chances to correct these complaints and correct deficiencies. None of that's true. There were two housekeeping amendments that added and subtracted defendants. The second one added Expedia and the booking subsidiaries, by the way, which all exist to feed the booking holding company. That's an issue that's not really before the court right now, but booking raised it. The bottom line is that our clients suffered a concrete injury and even if they didn't suffer a concrete injury, the analogies that other courts have already found would be more than satisfactory in any standing analysis. It's obvious that the plaintiffs in this case adequately alleged personal jurisdiction, adequately alleged claims under the Helms-Burton Act. And as I suggested before, we would ask for remand with instructions to reinstate the complaint, find that it's allegations of personal jurisdiction are legally sufficient and either order that jurisdiction exists or that a proper record be made on which to make such a decision and allow the plaintiffs to interlineate or amend the complaint to expressly allege equitable tolling. I see my time is way over. So I will stand down. Thank you, Your Honor. All right, Mr. Rolney, thank you very much. And Mr. Duffy, Mr. Shank, thank you both very much as well. We really appreciate your assistance. Yes, of course. What's that? I don't think we've installed one here yet, but give us time. Okay. Take your time and get set up. Let me go ahead and call the third case. It is...